UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GLENN A. COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-CV-01740-SEB-MJD |
| | ) | |
| CAROLYN COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Glenn A. Cooper ("Cooper") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d). On February 4, 2016, District Judge Sarah Evans Barker designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  [Dkt. 16.]  For the reasons set forth below, the Magistrate Judge recommends that the District Judge **REVERSE** the decision of the Commissioner and **REMAND** the matter for further consideration.

**I. Background**

Cooper filed his application for DIB on March 11, 2013, which alleged his disability began August 1, 2012. [R. at 19.] In the disability report filed in conjunction with his application, Cooper listed nerve damage & pinched nerve in neck, pain in right shoulder, pain in neck, migraines and muscle spasms. [R. at 158.] Cooper's application was initially denied on June 11, 2013, and upon reconsideration on July 11, 2013. [R. at 19.] Cooper timely requested a hearing on his application, which was held before Administrative Law Judge Roxanne Fuller ("ALJ") on

1

March 20, 2014. [R. at 34.] The ALJ issued her decision to again deny Cooper's application for DIB on June 27, 2014. [R. at 30.] On September 14, 2015, the Appeals Council denied Cooper's request for review, making the ALJ's decision the final decision of the Commissioner for the purposes of judicial review. [R. at 1-4.]  Cooper timely filed his Complaint with this Court on November 4, 2015, which Complaint is now before the Court.

## II. Legal Standard

To be eligible for DIB, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform his past relevant work or has no past relevant work but he can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional

2

capacity ("RFC"), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into [her] reasoning" and "build an accurate and logical bridge from the evidence to [her] conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

At step one, the ALJ determined Cooper met the insured status requirements of the Act through September 30, 2017, and has not engaged in substantial gainful activity since September 30, 2012. [R. at 21.] At the second step, the ALJ found Cooper's degenerative disc disease, headaches, and obesity to be severe impairments, as defined by the Act, because the impairments

had a more than minimal effect on Cooper's ability to perform basic work activities. [R. at 21-22.] Nevertheless, at step three, the ALJ found Cooper's degenerative disc disease did not meet or medically equal Listing 1.00 for musculoskeletal impairments. [R. at 23.] However, the ALJ makes no mention of sublisting 1.04 at step three.

After "careful consideration of the entire record," the ALJ determined Cooper could perform "sedentary work" with the following restrictions:

> [F]requent push or pull with the right dominant arm; frequent reaching and overhead reaching with the right dominant arm, frequent handling objects, that is gross manipulation with the right dominant hand; frequent fingering, that is fine manipulation with the right dominant hand; occasional exposure to moving mechanical parts, occasional operating a motor vehicle; occasional exposure to unprotected heights.

[R. at 23.] After making this RFC assessment, the ALJ determined that Cooper was unable to perform his past relevant work at step four. [R. at 29.] At step five, after considering Cooper's age, education, work experience, and RFC, the ALJ found jobs that exist in significant numbers in the national economy that Cooper can perform. [R. at 29.] The specific jobs found by the ALJ are document preparer, assembler/optical, and addresser. [R. at 30.] Based on these findings, the ALJ concluded Cooper was not disabled from August 1, 2012, through June 27, 2014, as defined in the Social Security Act.

## IV. Discussion

On appeal, Cooper advances four arguments for the reversal of the Commissioner's decision. First, Cooper argues that the ALJ failed to (1) explain the finding that his impairment does not meet or equal Listing 1.04; (2) to consider his migraines under Listing 11.03; and, (3) to obtain a medical opinion in relation to these Listing evaluations. Second, Cooper argues that the ALJ failed to discuss Cooper's headaches in relation to his ability to perform and maintain employment. Third, Cooper argues that the ALJ ignored the implications of the side effects of

4

Cooper's medications in a work setting. Lastly, Cooper argues that the ALJ failed to connect Dr. Koerber's diagnosis of Cooper's limited right hand abilities to the conclusion that Cooper can frequently perform tasks with his right dominant hand.

## A. Listing Considerations

*1. Whether the ALJ failed to explain the determination that Cooper's neck impairment does not meet or equal Listing 1.04.*

Cooper argues that the ALJ's assessment of his degenerative disc disease under Listing 1.00 Musculoskeletal System was inadequate. The ALJ's two-sentence assessment at this step states:

> I assessed the claimant's degenerative disc disease under § 1.00 Musculoskeletal System. However, the medical evidence falls short of the criteria of the section, and no medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

[Dkt. 14-2 at 24].

At step three of the ALJ's analysis, a claimant can be presumptively disabled if their impairment meets or equals an impairment in the Listing of Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App.1. It is the claimant's burden to show that his impairment meets a listing, and "he must show that his impairments satisfy all the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

Cooper submitted medical evidence in an effort to meet Listing 1.04(A) which states that disability can be found if there is a disorder of the spine (e.g. degenerative disc disease) that results in "compromise of a nerve root (including the cauda equine) or the spinal cord. With: (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the

5

lower back, positive straight-leg raising test (sitting and supine) . . ..." 20 C.F.R. Pt. 404, Subpt. P, App. 1

The ALJ evaluates Cooper's degenerative disc disease throughout her RFC analysis, but doesn't discuss the evidence in relation to specific listings. An ALJ "should mention the specific listings [she] is considering and [her] failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Id.* (citing *Barnett v. Barnhard*, 381 F.3d 664, 668 (7th Cir. 2004)). Although the ALJ used the opinion of medical professionals and Cooper's testimony for the RFC, there is no express connection between this evidence and Listing 1.00 or its sub-listing 1.04.

Additionally, the ALJ fails to point out what listing element is not met despite Cooper's extensive medical records concerning his degenerative disc disease. Therefore, it is not clear how Cooper fails to meet Listing 1.04. "The omission of any discussion of [] impairments *in conjunction with* the listings frustrates any attempt at judicial review . . . ." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (emphasis added). This omission cannot be made up for by the Commissioner's post hoc explanation. After all, the ALJ's analysis "must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Barbato v. Commissioner of Social Sec. Admin.*, 923 F. Supp. 1200, 1207 (N.D. Ill. 1987). And, "post hoc rational cannot save the ALJ's failure to analyze that evidence . . . ." *A.R.-W. v. Colvin*, No. 1:13-cv-369-JMS, 2013 WL 6059063 at \*6 (S.D. Ind. Nov. 18, 2013). This omission on the part of the ALJ's analysis requires remand.

*2. Whether the ALJ failed to consider Cooper's migraines under Listing 11.03.*

Cooper also argues that the ALJ's failure to consider whether his migraines meet or equal Listing 11.03 warrants remand. [Dkt. 17 at 16.] The burden is on the claimant to show that an

6

impairment meets a listing. He must show that all the criteria for the listing is satisfied in the record. *Kaiser v. Colvin*, 2015 WL 4138263 at * 3 (S.D. Ind. Jul. 7, 2015). Currently, there is no distinct listing for migraines, but an equivalency can be considered under the criteria for Listing 11.03. *See, e.g., Keller v. Colvin*, 2014 WL 948889, at *5 (S.D. Ind. Mar. 10, 2014) ("[M]igraines, though unlisted, may be medically equivalent to Listing 11.03"). This listing, designated for non-convulsive epilepsy, requires a "detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least three months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The Commissioner acknowledges that the ALJ did not address this listing. Nevertheless, he points out the ALJ discussed the headaches within the analysis of Cooper's degenerative disc disease and incorporated environmental limitations into the RFC to compensate for headache symptoms. This demonstrates that the ALJ "considered their severity." [Dkt. 18 at 15]. The Commissioner then notes that because the evidence relating to headaches does not meet the requisite criteria for Listing 11.03, any error in failing to discuss the listing is harmless. An error is harmless where upon remand "the ALJ will reach the same result." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). We look into "the evidence in the record to see if we can predict with great confidence what the result on remand will be." *Id.* Therefore, we must look to see if the claimant satisfies all of the listing criteria in order to require remand. *Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004).

The SSA provides examples of such equivalence determinations in its Program Operations Manual System ("POMS"). POMS § DI 24505.015, *available at*

7

https://secure.ssa.gov/appsl0/poms.nsf/lnx/0424505015 (last visited July 20, 2016). One example reads as follows:

> A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her [activities of daily living]. The claimant takes medication as her doctor prescribes. The findings of the claimant's impairment are very similar to those of 11.03, Epilepsy, nonconvulsive. Therefore, 11.03 is the most closely analogous listed impairment. Her findings are at least of equal medical significance as those of the most closely analogous listed impairment. Therefore, the claimant's impairment medically equals listing 11.03.

*Id*.

Although the Seventh Circuit has ruled that POMS has "no legal force," the ALJ should still utilize its examples in consideration of a listing. *Keller*, 2014 WL 948889, at *6. In this case, Cooper's subjective symptom claims include: almost daily headaches triggered by light, heat, loud noises, turning his neck too quickly, or sleeping the wrong way; blurry vision; headaches that turn into a migraines [R. at 176]; photophobia and phonophobia [R. at 263]; dizziness, nausea, and vomiting [R. at 220]. The ALJ did not compare these symptoms to the POMS example. Rather, she found Cooper's credibility to be lacking and noted that his "headaches were controllable with medication" and that he had a "generally normal functional level and acute lack of treatment." [Dkt. 14-2 at 28.] Part of the ALJ's reasoning relied upon her assessment of Cooper's daily living activities. She noted Cooper's activities of daily life included taking walks, shopping, attending physician appointments, basic self-care, and riding bicycles with his son. [R. at 28]. The ALJ concluded this part of the analysis by stating: "Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." [R. at 28.]

However, the Seventh Circuit has previously stated that "an ability to engage in activities of daily living (with only mild limitations) need not translate into an ability to work full time." *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) (internal quotations omitted). Therefore, the ALJ's assessment of Cooper's daily living activities is flawed.

Last year, this Court addressed a similar case, *Kaiser v. Colvin*.[1] In *Kaiser* the claimant presented significantly more medical evidence than Cooper of her chronic migraine headaches, including consistent treatment by a neurologist. Notice of Decision at 34-37, *Kaiser v. Colvin*, 2015 WL 4138263 (S.D. Ind. 2015), Dkt. 12-2. The migraines could last up to three days even though she took medication as prescribed, significantly interfering with her activities of daily living. *Kaiser*, 2015 WL 4138263 at *6-7. Despite the substantial evidence, which should have raised a question of listing equivalency, the ALJ in *Kaiser* failed to evaluate Listing 11.03 for the claimant's headaches. Therefore, the Court determined that omission was not harmless error.

In this case, Cooper's evidence of migraines was not as extensive in the record, but he did list his migraines as a separate ailment for evaluation on his application [Dkt. 14-6 at 6.], he filled out a headache questionnaire [Id. at 24.], and every doctor he saw diagnosed him with either headaches or migraines. Nevertheless, the ALJ failed to provide a conclusive statement or logical bridge for Cooper's headaches at step 3. This silence makes it impossible to know what evidence, if any, the ALJ weighed in consideration of the headaches. Although this case is not similar enough to *Kaiser* to conclusively state omission as reversible error, the lack of any listing discussion concerning Cooper's headaches should be corrected on remand.

---

[1] Case No. 1:14-cv-01480-SEB-MJD.

*3. Whether the ALJ needed to obtain a medical opinion for the listing evaluations.*

Cooper argues that the ALJ was required to obtain a medical opinion to assess his headaches under the Listing 11.03. The Commissioner points out that the requirement for an ALJ to obtain a medical opinion from a medical expert occurs only when "(1) no additional evidence is received, but *in the opinion of the ALJ* the symptoms, signs, and laboratory findings suggest that a judgment of equivalence may be reasonable; or (2) additional evidence is received that *in the opinion of the ALJ* may change the state-agency medical consultant's finding on medical equivalence." SSR 96-9p (emphasis added). However, "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670. (7th Cir. 2004). See also, 20 C.F.R. § 404.1526(b) ("Medical equivalence must be based on medical findings . . . We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence.") Further, the ALJ is required "to consider the opinion of one or more medical or psychological consultants designated by the Commissioner when determining whether an impairment medically equals a listing." *Wadsworth V. Astrue*, 2008 WL 2857326 (S.D. Ind.) (citing 20 C.F.R. §§ 404.1526(c), 416.926(c)).

In this case, state agency physicians determined Cooper was not disabled, but their assessment focused only on his degenerative disc disease. Nothing in their reports concerned his migraines. The ALJ even stated that she only gave theses assessments partial weight because "they do not address his alleged headaches." [R. at 28]. There is no discussion by the ALJ of the migraines in relation to a physician's assessment. This omission should be corrected on remand.

**B. The RFC Findings**

*1. The Migraines*

Cooper argues the ALJ was inconsistent in the RFC analysis because she stated that his headaches were severe in step two, but determined they were not severe in the course of the RFC. The Commissioner points out that this challenge by Cooper is really against "the ALJ's credibility finding with respect to his headaches."[Dkt. 18 at 20]. This is true. The ALJ analyzed the medical records, Cooper's testimony concerning the frequency and severity of the headaches, Cooper's coping mechanisms and treatments sought, and the side effects of the medications. Ultimately, the headache analysis tipped against Cooper because the ALJ determined he lacks credibility.

A credibility determination from an ALJ is afforded special deference. And as long as "an ALJ gives specific reasons supported by the record, [the court] will not overturn his credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). However, "[a]n ALJ must state specific reasons for the finding on credibility, supported by the evidence in the case record, [which] must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for that weight.'" *Gordon v. Astrue*, 2007 WL 4150328, *6 (S.D. Ind. 2007). (quoting SSR 96-7p).

Throughout the ALJ's discussion, she addresses the history of the headaches, objective medical evidence, Cooper's own testimony, the medications Cooper takes, and their side effects. [Dkt. 14-2 at 25-29.] She notes that the headaches were controllable with the use of Fioricet. [Id. at 26.] She also noted that Cooper had a "generally normal functional level and lack of acute

treatment" for the headaches. [Id. at 28.] This provides substantial evidence that the headaches were not severe enough to be disabling.

The ALJ notes other unsubstantiated testimony by Cooper. He claimed the use of a cane although no doctor had prescribed it for him. *Id.* Although, Cooper claimed pain in his shoulder, it did not limit his range of motion. *Id.* And despite these impairments, Cooper was able to maintain a fairly normal level of daily activity, which included walks, riding bikes, and shopping. The ALJ notes that the "ability to participate in such activities diminishes the credibility of the claimant's allegations of functional limitations. [Id. at 29.]

Although the state-agency consulting physician did not assign limitations for Cooper's migraines, the ALJ, despite her credibility findings, does assign "environmental limitations to compensate with any residual headache symptoms." [Id. at 28.] Therefore, the ALJ provides sufficient evidence and significant consideration for the severity of Cooper's headaches in the RFC.

*2. The Medication's Side Effects*

Next, Cooper argues that the ALJ failed to address the side effects of his medication in the RFC assessment. "The side effects of medication can significantly affect an individual's ability to work and therefore should figure in the disability determination process." *Flores v. Massanari*, 19 Fed. Appx. 393, 399. (7th Cir 2001). Cooper did make claims of pain that require him to take powerful pain medications, both for his migraines and neck injury. Prior to the RFC discussion, the ALJ acknowledges that Cooper's pain medicine results in "drowsiness, disorientation and dizziness." [Dkt. 14-2 at 25.] But she does not discuss Cooper's testimony that about 90 percent of the time, after taking the medication, he has to lie down and go to sleep. [Dkt. 14-2 at 41.] This results, on average, to lying down two to three times a day in 30-45

minute increments. [Id. at 42-43.] The ALJ did put limitations on the kind of work Cooper can do because of his ailments. She also noted she gave "careful consideration" to his hearing testimony but gave it "ultimately little weight" because "his subjective statements were simply inconsistent with the objective medical evidence." [R. at 28]. However, the ALJ gives no example for what objective medical evidence is inconsistent with his testimony concerning the side effects of his medication. Even if the ALJ didn't think Cooper's claims were fully supported by the objective medical evidence, she cannot disregard his complaints. *Knight v. Chater*, 55 F.3d 309 214 (7th Cir. 1995). "[S]ide effects of medication are factors to be considered in analyzing symptoms. 20 C.F.R. § 404.1529(c)(3)(iv). These side effects help to determine how "symptoms affect daily living and capacity to perform work activities." *Hall v. Astru*, 2010 WL 2545181, *4 (S.D. Ind. 2010).

It could be that the ALJ rejected this evidence. However, if "the ALJ fails to mention rejected evidence, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Because the ALJ ignored the line of evidence concerning the side effects of Cooper's medication, the case requires remand.

*3. The Right Dominant Hand Capabilities*

Finally, Cooper argues that the ALJ's assignment of "frequent" use of his right hand and arm in his RFC limitations is inconsistent with Dr. Koerber's diagnosis. Dr. Koerber, the state-agency consulting physician, had stated that Cooper "would have difficulty performing activities involving lifting or carrying objects with the right hand or handling objects with the right hand." [Dkt. 14-7 at 25]. The doctor also noted Cooper had decreased gross manipulation and 4/5-grip strength in his right hand. *Id.*

13

"Frequently" is the highest level of limitation used by the Social Security Administration for rating a claimant's functional capacity. "Frequently" is defined as "occurring one-third to two-thirds of an 8-hour workday (cumulative not continuous); as opposed to "occasionally" which is defined as "occurring very little up to one-third of an 8-hour workday." SSR 83-10. Essentially, the ALJ's limitation means Cooper cannot "constantly" push, pull, reach, handle or finger objects with his right hand.

The ALJ explained that she did not give full weight to Dr. Koerber's opinion, nor the other two state-agency consultants. Nor does she have to give these doctors full weight. "[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." Thomas v. Colvin, 745 F.3d 802, 808 (7th Cir. 2014). However, she fails provide a logical bridge from the evidence she does consider to the limitation of "frequently." Although Cooper points to no evidence that would support the more serious limitation of "occasional" use, it is the ALJ who must build a "logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

At the hearing, the Vocational Expert testified that a limitation increased to "occasional pushing, puling, reaching, handling and fingering" would eliminate all jobs in the economy. [R. at 55-56.] This infers that the limitation of "occasionally" for Cooper would render him disabled. Therefore, the difference between "frequently" versus "occasionally" is significant. The lack of a logical bridge from the evidence to the conclusion here cannot be harmless error. This omission requires remand.

## V. Conclusion

For the reasons set forth above, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the Commissioner's decision. Any objections to the Magistrate

Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date9:  09 AUG 2016

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov